**VIA EMAIL AND ECF**

Hon. Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

March 3, 2015

      Re:    <u>United States v. National Cinemedia, Inc., et al., No. 14-cv-8732 (AT)</u>

Dear Judge Torres:

      Consistent with Your Honor's Individual Practices in Civil Cases, Section V.E., Defendants respectfully request permission to have the Court hear direct testimony from its party witnesses live at trial, as opposed to via affidavit. Plaintiff opposes this request. The parties conferred on this matter for approximately 20 minutes on February 25, 2015, and for 10 minutes on February 26, 2015, as well as briefly on March 2, 2015, and via email on March 3, 2015. Counsel involved in the discussions included Mark Ryan, Bill Jones and Miriam Vishio for the United States, Craig Falls for Defendant NCM, and Lawrence Buterman for Defendant Screenvision. The parties' respective positions are set forth below.

**<u>Defendants' Position</u>**

      NCM and Screenvision agreed to merge in order to create a cinema advertising network that will more effectively compete with other options for video advertising, such as television and online. These alternatives offer advertisers significantly more impressions and better geographic coverage, ubiquity, and targeting ability than NCM and Screenvision can offer today as independent companies. As discovery has confirmed, by creating a more competitive network, the merger will provide advertisers a more attractive alternative to television and online, likely leading to increased cinema advertising revenues. Because NCM and Screenvision share a fixed percentage of advertising revenues received with their exhibitor partners pursuant to contracts, the creation of the more effective cinema advertising network through the merger necessarily will benefit exhibitor partners in addition to advertisers and the parties. Since the vast majority of exhibitors have contracts with NCM and Screenvision that guarantee their revenue shares and other terms well into the next decade, exhibitors will benefit for the merger for years to come, and any supposed harm that the United States proposes may result from the inability of exhibitors to play these two companies off one-another in future contract negotiations is extremely speculative at best.

      The limited number of NCM and Screenvision executives and employees we intend to call to testify at trial have unique knowledge concerning many of these key issues. In challenging Defendants' proffered rationale and explanation of the effects of the merger, the United States necessarily is putting into question the credibility of those individuals—many of whom it has indicated it will call adverse in its case-in-chief. Accordingly, we believe it is

1

important to our case that our party witnesses be permitted to testify live at trial on these topics. Consistent with Your Honor's Individual Practices, we are requesting permission to have our party witnesses provide live direct testimony at trial as opposed to via affidavit.  To be clear, we are not asking for any special treatment as Plaintiff suggests.  Rather, requests to present live testimony are specifically contemplated by Section V.E. of Your Honor's Individual Practices (requiring "[c]opies of affidavits constituting the direct testimony of each trial witness, except for the direct testimony of . . . a person for whom the Court has agreed to hear direct testimony live at trial.") (emphasis added).  Though the United States cannot legitimately suggest that it will suffer any harm if our party witnesses are permitted to testify live on direct, it nonetheless opposes our request.

In a typical non-jury case, the Court's rules concerning direct testimony would affect the parties equally.  However, here that is not the case.  Unlike NCM and Screenvision, the United States does not have any party witnesses that will be testifying.  This asymmetry means that the Court's standard rules operate only to preclude our executives and employees from providing live direct testimony.

Having our party witnesses submit direct testimony via affidavit provides Plaintiff with distinct asymmetrical litigation advantages.  First, because witnesses who submit directs by affidavit only appear at trial if the other side chooses to cross-examine them, the process provides Plaintiff with the ability to shield the Court from hearing live any party witness, no matter how critical, whose testimony Plaintiff believes does not support its case.  Second, even for those party witnesses that Plaintiff chooses to cross-examine, Plaintiff nonetheless is able to limit their live testimony just to the topics Plaintiff wants.  This is a serious concern here, given that Plaintiff's discovery has focused almost exclusively on establishing that NCM and Screenvision compete with each other—a fact that we do not dispute and do not believe is remotely dispositive.  The more relevant questions concern the competitive realities of the broader video advertising market, the likely effects of the merger on that competition, and its corresponding effects on NCM and Screenvision's exhibitor partners.  Limiting the live testimony of party witnesses to the scope of Plaintiff's cross examination is likely to deprive the Court of a cogent and coherent explanation of the key issues in the case by those witnesses with the greatest knowledge of the industry.  Third, having our parties submit written direct testimony provides Plaintiff with a roadmap, weeks in advance, of how precisely to cross-examine our witnesses.  Again, given the asymmetry that exists based on the United States being the Plaintiff, these advantages inure only in one direction.

The United States recognizes all of these advantages, and for that reason does not intend to provide the Court with affidavits for any of its fact witnesses.  Thus, even for those third-parties that have indicated they will voluntarily appear at trial (some of whom the United States worked with throughout this matter, including by preparing them for their depositions), Plaintiff is nonetheless serving trial subpoenas and taking the position that, consistent with Section V.E. of the Court's Individual Practices, direct testimony affidavits for those witnesses need not be provided.

During our meet-and-confer sessions, Plaintiff suggested that permitting party witnesses to give direct testimony live might cause the trial to extend beyond the allotted time.  Of course,

if the United States truly were concerned about the effect of live direct testimony on the length of trial, it presumably would submit its third party testimony via affidavit—but as noted above it will not. Moreover, the three weeks allocated by the Court for trial represents almost two more weeks than Plaintiff initially indicated the case would require. And given that party witnesses will be subject to re-direct examinations if Plaintiff chooses to cross-examine, live direct examinations should not materially extend the time that these witnesses are on the stand testifying. Nonetheless, if Plaintiff is concerned about the potential length of the trial, Defendants are prepared to agree to a limitation on hours for each side that will guarantee the trial be concluded within the scheduled amount of time.

While not mentioned during our first meet-and-confer session, on February 26, 2015, Plaintiff also claimed that it had been operating all along under the assumption that our party witness testimony would be submitted via affidavit, and that that assumption had impacted its strategy to date. Plaintiff did not explain how the assumption of party affidavits impacted its discovery strategy, and we respectfully submit that any current articulation would be pretextual. Indeed, even in this letter, Plaintiff can only postulate that it "*may* have used deposition time differently" if written testimony was not contemplated by the CMO (emphasis added). The reality is that the parties have not even begun to discuss trial procedures with one another, making any claim of delay or untimeliness simply insincere. And, this request is being made six weeks before trial, and weeks before final witness lists are even due, providing Plaintiff with ample time to prepare for live direct examinations.

Finally, though never mentioned during our meet-and-confer sessions, Plaintiff now suggests that our request was somehow untimely and motivated by gamesmanship. That accusation is both baseless and frankly disappointing. As Plaintiff knows, our request was made days after fact discovery ended, before the parties had any discussions about trial procedures, and weeks before Plaintiff will even receive our final witness list—indicating which witnesses (in the absence of the Court granting the requested relief) would have to provide written directs.

The upcoming trial should be about the effects of the NCM/Screenvision merger, not which side can game the Court's Individual Practices to its advantage. Defendants submit that in order for the parties to be on equal footing, its party witnesses should be permitted to present their direct testimony live at trial.

**Plaintiff's Position**

To begin with, the United States will not respond here to Defendants' arguments on the merits of their merger as those arguments are properly addressed in the upcoming pre-trial briefs and at trial itself. We will only reiterate that Defendants propose a merger to monopoly that plainly violates federal antitrust law.

The Court should reject Defendants' belated request to exempt their executives from the procedures set forth in the Case Management Order and in this Court's Individual Practices. The Case Management Order (CMO) requires submission with the joint pre-trial order of "copies of affidavits constituting the direct testimony of each trial witness" subject to certain exceptions, none of which apply to Defendants' request. The CMO was entered on November 24, 2014, and

3

Defendants raised no objection to direct testimony by affidavit.  The parties then engaged in several weeks of negotiations over a proposed supplemental CMO, which was jointly submitted to the Court and entered on January 26, 2015.  Defendants again made no request for modification or elimination of the affidavit requirement.  Their request comes only after the completion of fact discovery and depositions of their executives.  Under the supplemental CMO, the parties are required to exchange final witness lists on March 16.  Defendants offer the Court no explanation whatsoever for their tardiness in proposing that the Court depart from its CMO and Individual Practices, and there is an unmistakable air of gamesmanship in that delay.

The use of affidavits to receive direct testimony in bench trials is common in the Southern District.  It is efficient for the Court, the parties and the witnesses themselves.  Defendants evidently disagree with this settled practice and therefore seek special treatment from this Court.

Defendants' principal point is that there is an "asymmetry" here because they control witnesses (their respective executives) and the United States does not (except for its two experts for whom the United States will present written direct).  This argument is simply a quarrel with the rule itself as in virtually every civil, nonjury trial involving the government  the United States would control few if any fact witnesses and would present its case through witnesses under subpoena.  The logic of Defendants' argument goes further and would extend to any case in which, for example, an individual litigant is up against a corporation which plans to call several executives to testify at trial.  In short, Defendants disagree with accepted Southern District practice.

Moreover, Defendants' asymmetry argument overlooks the reality that written direct offers them significant benefits in addition to any perceived detriments.  First, defense counsel may appropriately work closely with party executives to ensure that their direct testimony is expressed exactly as Defendants would like.  Defendants' claim that written direct denies them an opportunity to provide a "cogent and coherent explanation of the key issues in the case" by its executives is therefore puzzling.  The Court's rule allows written testimony to be presented as "cogently and coherent[ly]" as Defendants' highly sophisticated counsel can make it.  Second, Defendants will present that testimony for the Court's study three weeks before the United States has the opportunity to challenge any of it through cross-examination and Defendants may also refer to the testimony in their pre-trial brief.  Finally, there is no risk to Defendants that witnesses will, as sometimes happens, forget or stumble over their direct testimony.  Defendants' direct will be as clean and forceful as the facts will allow.  The procedure is therefore far from asymmetrical.

Defendants' true concern with written direct of their executives appears to be that it may help the United States to determine "how precisely to cross-examine our witnesses."  That, of course, is an argument against the use of written direct in any bench trial and reveals Defendants' fundamental objection to the common practice in the Southern District.  But better prepared, more focused cross-examination benefits the trial process; it is not a hindrance.  Moreover, Defendants ignore the simple reality that their best inoculation against effective cross-examination is to submit truthful and candid written direct testimony.

Defendants further complain that if the United States chooses not to cross-examine one or more of the several executives on the Defendants' witness list then the executives may not appear at trial at all.  In other words, Defendants curiously fear that written direct may come into evidence without challenge through cross-examination.  Defendants might view unchallenged testimony as a benefit and not a detriment.  In any event, it is highly likely that the United States will cross-examine (or call adversely) Defendants' executives at trial.  Finally, Defendants have the right to conduct live redirect upon the completion of the United States' examination of their executives.

Defendants cavalierly dismiss any suggestion that, by waiting until after depositions were concluded before challenging the use of written direct testimony, they prejudiced the United States.  But it is hardly a stretch to believe that we might have used deposition time differently if written testimony was not contemplated by the CMO.  In any event, this argument ignores entirely the fact that Defendants completely fail to explain why they delayed until after depositions concluded before raising this issue with the Court.

Lastly, Defendants' suggestion that there is an asymmetry with respect to third-party witnesses is baffling.  Each side will call third-party witnesses at trial.  Neither side is required to submit written direct for third parties who are compelled by a subpoena to appear at trial.  It is the same for the United States as it is for the Defendants.  Defendants intimate that there is something inappropriate with the United States serving trial subpoenas on third-party witnesses who are troubled by the merger.  But the United States can neither compel attendance at trial without a subpoena nor require third parties to prepare written direct.  And witnesses who may dislike the merger may also be concerned about cooperating too closely with the United States at the risk of alienating the only two significant cinema advertising firms in the country.

Defendants have offered no persuasive reason to rewrite the CMO at this late hour and to be granted special treatment in this case.  The United States therefore respectfully asks the Court to deny Defendants' request.

Respectfully Submitted,

/s/ Mark W. Ryan
Mark W. Ryan
Counsel for the United States

/s/ Paul H. Friedman
Paul H. Friedman
Counsel for NCM LLC and NCM Inc.

/s/ Lawrence E. Buterman
 Lawrence E. Buterman
Counsel for Screenvision LLC and
SV Holdco LLC

5

NY\6826993.2